## AGREEMENT REGARDING EMPLOYEE'S OBLIGATIONS

Name of Employee  ERIC LANSKY  (print)

In consideration of my employment and/or continued employment by Reserve Management Corporation and its affiliates (the "Company"), but as no guarantee of continued employment, I hereby agree as follows:

**A.  Confidentiality.**

In the course of my employment with the Company, I understand that I am likely to become familiar with secret or confidential information of the Company, including but not limited to, customer and business partner lists, and other information of a confidential nature that is required to be maintained for the Company's continued business success (referred to herein as "Confidential Information").  I acknowledge that the Confidential Information, including but not limited to, customer and business partner lists, is the sole and exclusive property of the Company, to which I have no right, title or interest therein, and to which the Company's competitors have no access.  Confidential Information does not include information which: (a) is in or hereafter enters the public domain through no fault of mine; (b) is obtained by me from a third party having the legal right to use and disclose the same; or (c) is in my possession prior to receipt from the Company (as evidenced by my written records predating the date of employment). Accordingly, I agree to the following:

1. **Reporting Obligation With Respect To Confidential Information:** To furnish on demand, at any time during employment, to the Company, a complete list of the correct names and places of business of all customers and business partners of the Company, to immediately

notify the Company of the names and addresses of any new customers and business partners, and to report all changes of location of old customers and business partners so that in the event of termination of my employment, the Company will have a complete list of the correct names of all of the customers and business partners with which I have dealt.

2. **Return Of Confidential Information:** In the event of my termination, whether voluntarily or involuntarily, to surrender to the Company, as a prior condition to receiving a final check, all books, records, or notes containing lists of customers and business partners and addresses served by and assigned to me anywhere, all duplicate invoices or statements pertaining to customers and business partners, their needs, the schedules of service and sales calls upon them, all formulae, code books, price lists, product manuals and equipment, and any other information, including Confidential Information, which the Company has provided to me during my employment with the Company.

3. **Confidentiality; Non-Use**: To not utilize the Confidential Information for any reason or purpose other than in connection with the services I render to, and on behalf of, the Company. Accordingly, I agree that the Confidential Information will be kept strictly confidential and, except with the specific consent of the Company, will not be disclosed to anyone. Upon termination of my employment with the Company, whether voluntarily or involuntarily, I shall not use the Confidential Information for any reason or disclose it to any person.

4. **Agreement Not to Solicit Customers**: During the course of my employment by the Company and for a period of one year following the termination of such employment, for any reason whatsoever and whether such termination be voluntary or involuntary, I will not, directly or indirectly, as owner, officer, director, stockholder, partner, associate, consultant, manager, advisor, representative, employee, agent, creditor or otherwise, attempt to solicit or in any other

way disturb or service any person, firm or corporation that has been a customer or business partner of the Company at any time or times within 2 years prior to the termination date of my employment.

5. **Protection of Intellectual Property**: "Intellectual Property" shall mean all discoveries, inventions, improvements, formulas, ideas, devices, writings or other matters (including any notes, records, reports, sketches, plans, memoranda and other tangible information relating to such Intellectual Property), whether or not subject to protection under Patent or Copyright laws, which I shall conceive solely or jointly with others, or have access to, in the course of or within the scope of employment or which relates directly to the business of the Company, or its actual or anticipated research and development, or which was conceived or created using the Company's materials or facilities, whether during or after working hours.

All Intellectual Property developed during my employment shall be the sole and exclusive property of the Company without further compensation. Any Intellectual Property based upon the Company's Confidential Information and developed at any time either during or after the term of my employment shall be the property of the Company. I agree that my responsibilities include the application of my skill and education to new product and process design, and that I was "hired to invent" in my area of work. All copyright protectable material that I create during my employment with the Company are "works for hire" and are the exclusive property of the Company.

B. **Non-Competition.**

1. **Agreement Not to Compete**. In recognition of the foregoing, I agree that I shall not, without the written permission of the Chairman, President or Chief Operating Officer of the Company, during the course of my employment by the Company hereunder and for a period of

one year following the termination of such employment, whether voluntarily or involuntarily: (i) enter into the employ of or render any similar services to those that I carried out on behalf of the Company to any person, firm or corporation engaged in any Competitive Business (as defined in Section 2 below); (ii) engage in any Competitive Business for my own account; or (iii) become interested in any Competitive Business as an individual, partner, shareholder, creditor, director, officer, principal, agent, employee, trustee, consultant, advisor or in any other relationship or capacity; provided, however, that nothing contained in this Section shall be deemed to prohibit me from acquiring solely as an investment, publicly traded shares of capital stock of any corporation.

I understand that this clause is not meant to prevent me from earning a living or fostering my career and that my ability to earn a livelihood without violating these restrictions is a material condition to my employment with the Company. It is intended to prevent any "Competitive Business" from gaining an unfair competitive advantage from my knowledge of the Company, including its Confidential Information and Intellectual Property.

2. **"Competitive Business."** The term "Competitive Business" shall mean 401(k) administrative service providers and/or any line of business that has a strong emphasis or intended emphasis on short term fixed income and cash management products and services including money-market mutual funds, ultra short and short term bond funds, separately managed accounts for cash and/or short term fixed income, insured deposit products, or any other products and services in the cash or money-market arena or short and ultra short term bond products in addition to any similar services engaged in, conducted by or in development by the Company at any time during the course of my employment hereunder.

**C.     Remedies and Rules of Construction.**

1.     **Special Performance.** I hereby agree that in the event of a breach or a threatened breach by me of any of the provisions of this Agreement, the Company shall, in addition to the other remedies provided by law, maintain:

(a) The right and remedy to have such provisions specifically enforced by any court having equity jurisdiction, it being acknowledged and agreed that any breach or threatened breach of this Agreement will cause irreparable injury to the Company and that money damages will not provide an adequate remedy to the Company.

(b) The right and remedy to require me to account for and pay over to the Company all compensation, profits, monies, accruals, increments or other benefits (collectively "Benefits") derived or received by me as a result of any transactions constituting a breach of any of the provisions of this Agreement, and I hereby agree to account for and pay over such Benefits to the Company.

2.     **Severability.**

(a) If any of the covenants contained in this Agreement is hereafter construed to be invalid or unenforceable, the same shall not affect the remainder of the covenant or covenants, which shall be given full effect, without regard to invalid portions.

(b) If any of the covenants contained in this Agreement or any part thereof is held to be unenforceable because of the duration of such provisions or the area covered thereby, the parties agree that the court making such determination shall have the power to reduce the duration and/or area of such provision and/in its reduced form, such provision shall then be enforceable.

D. **Employment Agreement.**

I acknowledge that this agreement does not constitute an employment agreement and agree that this agreement shall be binding upon me regardless of whether or not my employment shall continue for any length of time hereafter and whether or not my employment is terminated for any reason whatsoever by either the Company or me, or by mutual agreement of both.

E. **Costs**.

I agree that if I am held by any Court of competent jurisdiction to be in violation, breach or non-performance of any of the terms of this Agreement, I shall pay all costs of such action or suit, including, without limitation, reasonable attorneys' fees.

F. **Drafting and Construction**.

The drafting and negotiation of this Agreement have been participated in by each of the Parties, and for all purposes this Agreement shall be deemed to have been drafted jointly by each of the Parties, and not to be construed against any one party.

G. **Knowing and Voluntary**.

I represent that I have carefully read this Agreement in its entirety and fully understand the terms thereof, that I have been given a reasonable time to consider this Agreement, and that I have had an opportunity to seek advice as to the meaning and significance of this Agreement, and all of the terms of this Agreement.

H. **Governing Law**.

This agreement shall be governed by and construed in accordance with the laws of the State of New York without giving effect to the conflict of law principles thereof.

**I.      Complete Understanding.**

I acknowledge that this Agreement constitutes the complete understanding between the parties, all prior representations or agreements having been merged into this Agreement.

Agreed to and Accepted:

_____
(Signature of Employee)

Dated: _____April 29, 02_____

Witnessed by Reserve Management Corp.:

_____
(Signature of Witness)

_____
Witness Name & Title (print)



**THE RESERVE FUNDS**
Founders of
"America's First Money Fund"
Est. 1970

April 26, 2002

Eric Lansky
45 Hickory Drive
Maplewood, NJ 07041

Dear Eric,

The following is the clause you discussed with Bruce Bent II that we are granting to you in conjunction with your signing the attached Agreement Regarding Employee's Obligations.

In the event of a change of control of Reserve Management Corp. and Reserve Management Company Inc., where the change of control consists of entities or persons other than Bent family members and not limited to the current Bent family members that are presently owners, section B of the attached "Agreement Regarding Employee's Obligations" which pertains to the one year non-compete will be void and no longer in effect for Eric Lansky.

Sincerely,

*[signature]*

Arthur Bent, Chief Operating Officer

1250 BROADWAY, NEW YORK, NY 10001-3701

212-401-5500 ■ 800-637-1700 ■ FAX: 212-401-5940 ■ www.reservefunds.com