UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ISLAND INTELLECTUAL PROPERTY LLC,<br><br>       Plaintiff,<br><br>  v.<br><br>STONECASTLE CASH MANAGEMENT LLC,<br>STONECASTLE INSURED SWEEP LLC,<br>STONECASTLE PARTNERS, LLC,<br>STONECASTLE FINANCIAL CORP., and<br>STONECASTLE ASSET MANAGEMENT<br>LLC,<br><br>       Defendants. | No. 1:19-cv-04792-JPO<br><br>ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

|   |   |   | Page |
|---|---|---|---|
| Table of Authorities | | | ii |
| Table of Abbreviations | | | iv |
| Preliminary Statement | | | 1 |
| Argument | | | 1 |
| I. | The Asserted Patents Claim Patent-Ineligible Subject Matter | | 1 |
| | A. | Island IP's Assertions that the Asserted Patents Have Already Been Found Eligible Are False | 1 |
| | B. | Island IP Misleadingly Advances Inapplicable Law | 3 |
| | C. | The Asserted Claims Are Ineligible | 4 |
| | | 1. Step 1: The Asserted Claims Are Directed to an Abstract Idea | 5 |
| | | 2. Step 2: The Asserted Claims Do Not Contain an Inventive Concept | 6 |
| II. | Island IP's Trade Secret Cause of Action Remains Insufficient | | 8 |
| III. | Island IP's Defense of Its Ancillary Causes of Action Fails | | 9 |
| IV. | Island IP's Alter Ego Allegations Remain Deficient | | 9 |
| Conclusion | | | 10 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aatrix Software v. Green Shades Software*,
    890 F.3d 1354 (Fed Cir. 2018)................................................................................7

*Alice. Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)................................................................................2

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................6, 9

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014)..............................................................................5

*Control v. Digital Playground, Inc.*,
    2016 WL 5793745 (S.D.N.Y. Sept. 30, 2016).......................................................8

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)...........................................................................5, 6

*Golden Horn Shipping Co. Ltd v. Volans Shipping Co. Ltd.*,
    2014 WL 5778535 (S.D.N.Y. Nov. 6, 2014).........................................................9

*In re Greenstein*,
    --- Fed. Appx. ----, 2019 WL 3060986 (Fed. Cir. July 12, 2019)........................3

*In re Greenstein*,
    --- Fed. Appx. ----, 2019 WL 4233554 (Fed. Cir. Sep. 6, 2019) ..........................4

*Hinds Count, Miss. v. Wachovia Bank N.A.*,
    708 F.Supp.2d 348 (S.D.N.Y. 2010).....................................................................9

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016)..............................................................................4

*iSentium, LLC v. Bloomberg Finance L.P.*,
    343 F.Supp.3d 379 (S.D.N.Y. 2018).....................................................................3

*Island Intellectual Property LLC v. Deutsche Bank AG*,
    2012 WL 386282 (S.D.N.Y. Feb. 6, 2012)...........................................................2

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012)................................................................................................4

*Medidata Sols., Inc. v. Veeva Sys. Inc.*,
  2018 WL 6173349 (S.D.N.Y. Nov. 16, 2018)..................................................................8

*In re Morinville*,
  767 Fed. Appx. 964 (Fed. Cir. 2019)..........................................................................7

*NetJets Aviation, Inc. v. LHC Communications, LLC*,
  537 F.3d 168 (2nd Cir. 2008)....................................................................................9

*NetSoc, LLC v. Match Grp., LLC*,
  2019 WL 3304704 (N.D. Tex. July 22, 2019)............................................................3

*In re Parmalat Securities Litig.*,
  377 F.Supp.2d 390 (S.D.N.Y. 2005).........................................................................10

*Sandbox Software, LLC v. 18Birdies, LLC*,
  2019 WL 2524780 (D. Del. June 19, 2019)...............................................................3

*SAP America, Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018).................................................................................4

*Solutran, Inc. v. Elavon, Inc.*,
  931 F.3d 1161 (Fed. Cir. 2019).................................................................................4

*Stanacard v. Rubard, LLC*,
  2015 WL 7351995 (S.D.N.Y. Nov. 18, 2015)............................................................4

*Streit v. Bushnell*,
  424 F.Supp.2d 633 (S.D.N.Y. 2006).........................................................................9

*Synopsys, Inc. v. Mentor Graphics Corp.*,
  839 F.3d 1138 (Fed. Cir. 2016).................................................................................4

*Tesla Wall Sys., LLC v. Related Cos., L.P.*,
  2017 WL 6507110 (S.D.N.Y. Dec. 18, 2017) ...........................................................8

*Trading Techs. Int'l, Inc. v. CQG, Inc.*,
  675 Fed. Appx. 1001 (Fed. Cir. 2017).......................................................................6

*Ultramercial, LLC v. Hulu, LLC*,
  657 F.3d 1323 (Fed. Cir. 2011).................................................................................2

*Uniloc USA, Inc. v. ADP, LLC*,
  772 Fed. Appx. 890 (Fed. Cir. 2019).........................................................................5

*WalkMe Ltd. v. Pendo.io, Inc.*,
  2019 WL 1512602 (S.D.N.Y. Apr. 4, 2019)..............................................................3

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| 157 Patent | U.S. Patent No. 8,719,157 (D.I. 13-4) |
| 267 Patent | U.S. Patent No. 8,359,267 (D.I. 13-2) |
| 689 Patent | U.S. Patent No. 8,655,689 (D.I. 13-10) |
| 766 Patent | U.S. Patent No. 8,150,766 (D.I. 13-1) |
| 911 Patent | U.S. Patent No. 8,712,911 (D.I. 13-3) |
| Allocation Model Patent | The 689 Patent |
| Asserted Patents | U.S. Patent Nos. 8,150,766; 8,359,267; 8,655,689; 8,712,911; and 8,719,157 |
| Compl. | Complaint (D.I. 13) |
| FDIC | Federal Deposit Insurance Corporation |
| FFIEC | Federal Financial Institutions Examination Council |
| Island IP | Plaintiff Island Intellectual Property LLC |
| Mem. | The memorandum filed in support of StoneCastle's motion to dismiss (D.I. 41) |
| Opp. | Plaintiff's memorandum in opposition to StoneCastle's motion to dismiss (D.I. 49) |
| PTO | United States Patent and Trademark Office |
| Reciprocal Deposit Patents | The 157, 267, 766, and 911 Patents |
| SCCM | Defendant StoneCastle Cash Management LLC |
| SCIS | Defendant StoneCastle Insured Sweep LLC |
| SCP | Defendant StoneCastle Partners, LLC |
| SCFC | Defendant StoneCastle Financial Corp. |
| SAM | Defendant StoneCastle Asset Management LLC |
| StoneCastle | Defendants StoneCastle Cash Management LLC, StoneCastle Insured Sweep LLC, StoneCastle Partners, LLC, StoneCastle Financial Corp., and StoneCastle Management LLC |

**PRELIMINARY STATEMENT**

StoneCastle demonstrated in its opening brief that the Asserted Patents are patent-ineligible. In response, Island IP incredibly claims that the Asserted Patents have already been adjudged patent-eligible. That is indisputably false. No judge in any district or administrative tribunal has ever even *addressed* the Asserted Patents' eligibility, let alone adjudged them patent-eligible. Island IP's assertion otherwise goes way beyond advocacy, and crosses the line into flat misrepresentation. Island IP continues its misdirection by advancing arguments under unequivocally inapplicable legal standards. After dispensing with those misleading efforts, all that is left are Island IP's bare allegations that its claims are patent-eligible—allegations that are insufficient even at the motion to dismiss stage. Island IP does nothing to refute StoneCastle's principal argument that no court since *Alice*—not a single decision—has ever found claims directed to fundamental business practices like those claimed in the Asserted Patents to be eligible.

Island IP's remaining claims similarly fail. Recognizing the deficiencies in its trade secret claim, Island IP now relies on a belatedly-submitted declaration to try to fill the critical holes in its Complaint. That improper declaration cannot cure Island IP's deficient pleading. And Island IP does not advance any meaningful defense for its ancillary claims or its alter ego cause of action, instead relying on facially inapposite case law. All of Island IP's claims should thus be dismissed.

**ARGUMENT**

**I. The Asserted Patents Claim Patent-Ineligible Subject Matter**

    **A. Island IP's Assertions that the Asserted Patents Have Already Been Found Eligible Are False**

Island IP repeatedly asserts that the Asserted Patents have already been adjudged patent-eligible. *E.g.*, Opp. at 1, 2, 7, 8, 9, 13–14. In so doing, Island IP relies on outright falsehoods, as no such judgment exists. In fact, no court has even considered the eligibility of the patents.

Island IP first contends that Judge Sleet in the District of Delaware previously "adjudged" all of the Asserted Patents patent-eligible. Opp. at 9; *see also id.* at 2. That is false; Judge Sleet made no such finding. Instead, the parties in those prior cases settled their dispute, and, in so doing, proposed *consent judgments* for Judge Sleet to enter. Opp. Ex. H at 3–5; Opp. Ex. I at 3–5. Those consent judgments included a stipulation that *the alleged infringer*, not Judge Sleet, "acknowledges . . . that each of the claims . . . are valid, enforceable, and patent-eligible." Opp. Ex. H at 4; Opp. Ex. I at 4. In fact, a review of those cases' dockets reveals that patent-eligibility was never litigated at all. Island IP's assertion otherwise crosses the line of zealous advocacy.

Island IP next argues that Judge Forrest, in this District, already rejected StoneCastle's arguments. Opp. at 7–9; *see also* Opp. at 2. But Judge Forrest did not address *any* of the Asserted Patents. She did render a decision on a related patent, but to the extent that decision is relevant at all, it *supports* this motion. Judge Forrest rendered a decision regarding the parent of the Asserted Patents in 2012, two years before the Supreme Court's landmark *Alice* decision in 2014. *Island Intellectual Property LLC v. Deutsche Bank AG*, 2012 WL 386282 (S.D.N.Y. Feb. 6, 2012). Judge Forrest based her decision on the conclusion that Island IP's patent claims were "analogous to those in *Ultramercial*," referring to a 2011 Federal Circuit opinion holding certain third-party patent claims were patent-eligible. *Id.* at *7 (citing *Ultramercial, LLC v. Hulu, LLC*, 657 F.3d 1323 (Fed. Cir. 2011) (*Ultramercial I*)). After the Supreme Court issued its *Alice* opinion, however, the *Ultramercial* litigation made its way back to the Federal Circuit, where the Federal Circuit held that the very same claims it previously found eligible were now *ineligible* in light of *Alice*. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 711–14 (Fed. Cir. 2014) (*Ultramercial II*). Thus, under current law, Judge Forrest's decision supports StoneCastle's position, not Island IP's.

Island IP also misleadingly argues that the PTO examiners who allowed the Asserted

2

Patents have already rejected StoneCastle's arguments. Opp. at 2, 13–14. Island IP points to no evidence that the examiners ever considered StoneCastle's arguments. Regardless, all of the Asserted Patents were examined and issued prior to *Alice*, and were thus decided under different controlling law.[1] Moreover, Island IP's claim that the examiner "expressly found" that the claims disclose "an unconventional technological solution to a technological problem" (*id.* at 19)—language that is directly linked to the § 101 inquiry[2]—is false. The examiner made no such finding, express or otherwise. Instead, the examiner's conclusion was based on the examiner's finding that prior art "fail[ed] to teach, suggest or render obvious" certain claim elements. Opp. Ex. J at 2. That finding relates to anticipation and obviousness under 35 U.S.C. §§ 102 and 103, not eligibility under § 101. As explained below, §§ 102 and 103 analyses are distinct from those under § 101.[3]

### B. Island IP Misleadingly Advances Inapplicable Law

Island IP next suggests that the technology claimed by the Asserted Patents is "novel," "non-obvious," and commercially successful, and therefore must be patent-eligible. Opp. at 1, 4, 6, 7, 14, 18. In so doing, Island IP improperly conflates the anticipation and obviousness analyses under §§ 102 and 103 with an eligibility analysis under § 101.

The Federal Circuit has been clear that novelty, non-obviousness, and commercial success, which may be relevant to challenges under §§ 102 and 103, are not relevant to challenges under

---

[1] Even if the Asserted Patents had been examined and issued after *Alice*, that would still not prove that the claims were patent-eligible. A patent's issuance is not dispositive of the eligibility inquiry. Courts have repeatedly held claims issued post-*Alice* to be ineligible. *E.g.*, *NetSoc, LLC v. Match Grp., LLC*, 2019 WL 3304704, at *3 (N.D. Tex. July 22, 2019); *WalkMe Ltd. v. Pendo.io, Inc.*, 2019 WL 1512602, at *1 (S.D.N.Y. Apr. 4, 2019); *iSentium, LLC v. Bloomberg Finance L.P.*, 343 F.Supp.3d 379, 382 (S.D.N.Y. 2018); *Sandbox Software, LLC v. 18Birdies, LLC*, 2019 WL 2524780, at * 5 (D. Del. June 19, 2019).

[2] *See, e.g.*, *In re Greenstein*, --- Fed. Appx. ----, 2019 WL 3060986, at *3 (Fed. Cir. July 12, 2019) (*Greenstein II*).

[3] Island IP also suggests that David Gareis's statements during prosecution of a different Island IP patent are somehow relevant. Mr. Gareis's lay statements as to a different patent have no bearing here. And Island IP's assertion that the statements were made with respect to a "related Double Rock invention" is misleading at best: The patent Mr. Gareis's statement referenced is not related to any of the Asserted Patents. Second Bekier Decl., Ex. 17 (U.S. Patent No. 10,068,294) at "Related U.S. Application Data."

3

§ 101. In fact, courts "may assume that the techniques claimed are groundbreaking, innovative or even brilliant, but that is not enough for eligibility." *SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) (internal quotes omitted). "Nor is it enough for subject-matter eligibility that claimed techniques be novel and nonobvious in light of prior art, passing muster under 35 U.S.C. §§ 102 and 103." *Id.*; *see also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 89–90 (2012); *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1169 (Fed. Cir. 2019). Indeed, "[t]he search for a § 101 inventive concept is . . . distinct from demonstrating § 102 novelty." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016); *see also Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016) (same for obviousness under § 103); *Stanacard v. Rubard, LLC*, 2015 WL 7351995, at *8 (S.D.N.Y. Nov. 18, 2015). Just last week, in again rejecting claims directed to financial services, the Federal Circuit rebuffed the patent applicant's attempt to rely on commercial success. *In re Greenstein*, --- Fed. Appx. ----, 2019 WL 4233554, *2 (Fed. Cir. Sep. 6, 2019) (*Greenstein III*) (commercial success "is insufficient to transform the claims into a patent-eligible application").

C. **The Asserted Claims Are Ineligible**

Island IP's factually incorrect and legally irrelevant arguments addressed above serve only to distract from its lack of any answer to StoneCastle's arguments. After dispensing with its misdirection, all that is left of Island IP's rebuttal are its conclusory assertions that its claims contain "technological solutions" to "technological problems" and "improve the way computers operate." These naked attempts to invoke buzzwords found in the handful of post-*Alice* Federal Circuit cases finding claims patent-eligible fail; it is indisputable that the Asserted Patents do nothing of the kind. Instead they merely *use* computers to perform financial practices.[4]

---

[4] Island IP wrongly criticizes StoneCastle's identification of one representative claim for the Reciprocal Deposit Patents. Opp. at 15 n.3. A claim from one patent can be representative for others that "share substantially the same

### 1. Step 1: The Asserted Claims Are Directed to an Abstract Idea

StoneCastle showed that the claims of the Reciprocal Deposit Patents are directed to the abstract idea of a multi-bank depository program, that the claims of the Allocation Model Patent are directed to the abstract idea of keeping a ledger for such a program, and that both ideas are fundamental economic practices long known in the financial services industry (a fact that Island IP does not dispute). Mem. at 7–11, 17–19. StoneCastle also showed that all of the claims of the Asserted Patents are directed to processes that humans can perform manually, and that the Allocation Model Patent itself states that the claimed invention can be carried out in Microsoft Excel (*id.* at 9–10, 18–19)—both facts that Island IP does not dispute. Finally, StoneCastle showed that post-*Alice*, the Supreme Court, Federal Circuit and other courts have universally held claims directed to fundamental business, financial or economic practices patent-ineligible. *Id.* at 6.

At *Alice* Step 1, Island IP's only response—putting aside its legally irrelevant allegation of commercial success (Opp. at 18)—is to cite to the wholly inapposite decisions in *Enfish*, *Uniloc*, and *Trading Technologies*. *Id.* at 16–18. But the claims in those cases do not even remotely resemble the claims at issue here. In *Enfish*, the claims related to a self-referential table for a computer database. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1330 (Fed. Cir. 2016). In both *Uniloc* and *Trading Technologies*, the claims were similarly directed to improvements in *computer functionality*; none involved claims directed to the implementation of a fundamental economic practice on a generic computer, like the claims here. *See Uniloc USA, Inc. v. ADP, LLC*, 772 Fed. Appx. 890, 896 (Fed. Cir. 2019) (claims related to the centralized distribution of

---

specification." *See Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1345, 1348 (Fed. Cir. 2014) (Claim 1 of '855 patent representative of other patents in suit). Here, Island IP itself does not distinguish among the Reciprocal Deposit Patents. In any event, the analysis is the same regardless of which proposed representative claims are used, as the differences are immaterial. The claims from the 157, 267, and 911 Patents identified by Island IP add only trivial details, such as changing "government-back insured" to "FDIC", or calling for allocation of "a portion of" government funds rather than "the" government funds. *Compare* 766 Patent, Cl. 1 *with* 157 Patent, Cl. 1, 267 Patent, Cl. 1, and 911 Patent, Cl. 1.

software); *Trading Techs. Int'l, Inc. v. CQG, Inc.*, 675 Fed. Appx. 1001, 1003 (Fed. Cir. 2017) (claims related to a specific graphical user interface for trading stocks and other products).

Moreover, Island IP's assertion that the claims here, like those in *Enfish*, "improve the way computers operate through 'logical structures and processes'" (Opp. at 17) is entirely unfounded. In *Enfish*, the claimed self-referential table worked "differently than conventional database structures" and those differences provided specific improvements in the way the computers functioned—for example, by providing faster search times and smaller memory requirements. *Enfish*, 822 F.3d at 1337. The Federal Circuit thus found that the "focus of the claims is on an *improvement to computer functionality* itself, not on economic or other tasks for which a computer is used in its ordinary capacity." *Id.* at 1336 (emphasis added). That is totally unlike the claims here, which recite the *use* of computers, not improvements to *how* computers function.

In contrast to the cases Island IP cites, the claims here do not improve the way a computer works. The patents on their faces do not purport to offer any technological improvement, and although Island IP claims the Asserted Patents provide "technological solutions" (Opp. at 6, 19), it never identifies what those alleged solutions are or why they are supposedly "technological." Such "naked assertions devoid of further factual enhancement" are not sufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotes omitted). In any event, the claims themselves demonstrate that the patents simply recite the high-level steps necessary to perform their respective abstract ideas. Mem. at 8–10, 17–19.[5]

2. **Step 2: The Asserted Claims Do Not Contain an Inventive Concept**

At *Alice* Step 2, StoneCastle showed that the Asserted Patents fail to claim any inventive

---

[5] Island IP incorrectly asserts that StoneCastle does not address the claim language. Opp. at 3. StoneCastle explains exactly what the claim language is directed to. *See*, *e.g.*, Mem. at 8, 17–18. Island IP, by contrast, does not deal with claim language anywhere in its Opposition, let alone explain why the claim language allegedly improves the function of computers.

concept, and instead merely claim the use of generic computer technology to implement their abstract ideas. Mem. at 11–14, 19–20. Island IP does not even attempt to rebut StoneCastle's argument that the claims of the Asserted Patents recite only generic computer technology.

Island IP instead argues that the examiner "expressly" found that the inventions "address an unconventional technological solution to a technological problem." Opp. at 19. This contention is both incorrect and irrelevant—the examiner's allowance dealt with §§ 102 and 103, not § 101. *Supra*, at 2–4; *see also In re Morinville*, 767 Fed. Appx. 964, 969–70 (Fed. Cir. 2019) (examiner finding claims novel and non-obvious does not "establish the existence of an 'inventive concept'").

Island IP next argues that the Complaint sets forth "factual" allegations regarding allegedly inventive concepts, and that this is sufficient to survive a motion to dismiss. Opp. at 12–13, 20.[6] StoneCastle addressed these purportedly "factual" allegations in its opening brief, and showed that they either (i) recited concepts that were indisputably *not* inventive, (ii) recited the abstract ideas themselves, or (iii) were mere conclusory statements that are to be given no weight under Supreme Court precedent. Mem. at 11–13, 19–20. Island IP fails to address—let alone rebut—any of StoneCastle's methodical dismantling of Island IP's supposedly "factual" assertions.

Finally, Island IP argues that the Asserted Patents "solve[] difficult technological problems . . . with a very particular detailed solution of how to do it," and that "the structural elements" of the claims "integrate the alleged abstract idea into a practical application." Opp. at 19–20. Those are just words, completely unsupported by any factual basis. The Complaint, the patents, and Island IP's Opposition fail to describe the supposed "technological" problems, what the solution

---

[6] Island IP relies on *Aatrix Software v. Green Shades Software*, 890 F.3d 1354 (Fed Cir. 2018) for this point. But the Complaint in that case contained detailed allegations concerning technological improvements and explaining how the invention improved the functioning of software. *See* Second Bekier Decl., Ex. 18, (*Aatrix Software v. Green Shades Software,* Second Am. Compl.) ¶ 33-43. That is not the case here; Island IP's Complaint nowhere explains how the claimed invention somehow provides technological improvements to computer technology.

is (beyond simply carrying out the abstract idea), or how the alleged "structural elements" (which are generic computer components) "integrate" the abstract idea into a patentable invention. Conclusory allegations such as these are afforded no weight in an *Alice* analysis. *See Control v. Digital Playground, Inc.*, 2016 WL 5793745, at *6 (S.D.N.Y. Sept. 30, 2016) ("Plaintiff baldly asserts that the claimed invention is an improvement on existing technology, but such conclusory assertions have no weight in the step two analysis.").

## II. Island IP's Trade Secret Cause of Action Remains Insufficient

StoneCastle showed that Island IP's trade secret cause of action is insufficient for two reasons: (1) Island IP did not adequately identify the alleged trade secrets; and (2) Island IP did not adequately allege that StoneCastle misappropriated its alleged trade secrets. Mem. at 21–23.

In response, Island IP first implies that it need not adequately identify its trade secrets in the Complaint because StoneCastle supposedly knows what those trade secrets are. Opp. at 21–22. This is nonsense. Even if StoneCastle did know what alleged trade secrets were at issue (and it does not), that does not absolve Island IP of its Rule 8 obligations. Mem. at 21–22.

Island IP next asserts that the Complaint's identification of trade secrets is sufficient, citing two inapposite cases. Opp. at 22–23. Both of those cases involved descriptions far more definite than Island IP's claim of unidentified "confidential information relating to cash management and money regulation systems." *See Tesla Wall Sys., LLC v. Related Cos., L.P.*, 2017 WL 6507110, at *2 n.2 (S.D.N.Y. Dec. 18, 2017) (*e.g.*, "business design and data demonstrating the feasibility, reliability, and cost of building a curtain wall company from the ground up"); *Medidata Sols., Inc. v. Veeva Sys. Inc.*, 2018 WL 6173349, at *1 (S.D.N.Y. Nov. 16, 2018) (*e.g.*, "historical pricing data, pricing projections, [and] pricing formulae").[7]

---

[7] Island IP attempts to remedy its pleading deficiencies by submitting a declaration setting forth numerous allegations (the vast majority of which are provably false) not disclosed in its Complaint. *See* Bent Decl. (D.I. 50).

8

Finally, Island IP suggests that the Court should simply infer StoneCastle misappropriated trade secrets because, through entirely appropriate means (*i.e.*, prior employment), certain StoneCastle employees allegedly possess Island IP's trade secrets. Opp. at 23–24. The mere allegation that StoneCastle employees are lawfully in possession of alleged trade secrets, even if true, does not sufficiently plead that anyone *misappropriated* those trade secrets. Mem. at 23.

### III. Island IP's Defense of Its Ancillary Causes of Action Fails

Island IP's only defense of its ancillary causes of action is that StoneCastle has "provide[d] no authority" for the proposition that when the predicate facts for a cause of action do not exist, those claims should be dismissed (Opp. at 24), a proposition so fundamental it needs no authority. Nonetheless, it is amply supported by the authority set forth in StoneCastle's opening brief. Mem. at 3–4. For example: "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). Without the predicate facts of patent infringement and trade secret misappropriation, Island IP's ancillary claims fail.

### IV. Island IP's Alter Ego Allegations Remain Deficient

StoneCastle showed that Island IP's alter ego claim did not come close to stating a claim under New York law. Mem. at 24–25. In response, Island IP cites three cases, *none of which addresses New York law*. Opp. at 24–25 (citing *NetJets Aviation, Inc. v. LHC Communications, LLC*, 537 F.3d 168, 176 (2nd Cir. 2008) (Delaware law); *Hinds Count, Miss. v. Wachovia Bank N.A.*, 708 F.Supp.2d 348, 366 (S.D.N.Y. 2010) (California law); *Golden Horn Shipping Co. Ltd v. Volans Shipping Co. Ltd.*, 2014 WL 5778535 (S.D.N.Y. Nov. 6, 2014) (Federal law).

---

A later-submitted declaration does not cure Island IP's deficient pleading. *See Streit v. Bushnell*, 424 F.Supp.2d 633, 639 n.3 (S.D.N.Y. 2006) ("A complaint cannot be modified by a party's affidavit or by papers filed in response to a dispositive motion to dismiss . . . .").

Under the New York law operative here, Island IP must plead that SCFC, SAM, and SCP each exercised "complete domination" over SCIS and/or SCCM in respect to the attacked transaction, and used that to "commit fraud or wrong" against Island IP. Island IP failed to do so. Mem. at 24–25. As to SCP, Island IP argues complete domination is shown because each entity shares senior management members, StoneCastle entities share personnel and systems with SCP, and StoneCastle incorporates a "team approach" to initiatives. Opp. at 25. These allegations, even if true, do not rise to the level of "complete domination." *See In re Parmalat Securities Litig.*, 377 F.Supp.2d 390, 407 (S.D.N.Y. 2005) ("The overlap of some personnel, without more, however, is insufficient to conclude that an *alter ego* relationship exists."). Nor do they show complete domination "in respect to the transaction attacked," or that such domination has "been used to commit fraud or wrong against" Island IP. Mem. at 24.

As to SCFC and SAM, Island IP merely recites the conclusory allegation that they are "alter egos of SCCM and SCIS who unjustly benefited"—it does not allege *any facts* to support the claim. Opp. at 25. SCFC is not even an affiliate of SCP, SCCM, or SCIS—it is an independent, publicly-owned corporation with an independent board. Moreover, even if Island IP could show that *SCP*, as corporate parent, exercised sufficient control over SCIS and SCCM (the only entities alleged to have engaged in any wrongdoing), that still would not be enough to establish alter ego liability over *SAM* and *SCFC*—two entities that Island IP does not even *allege* were involved in any wrongdoing, whether directly or through entities they "completely dominate."

## **CONCLUSION**

StoneCastle respectfully requests the Court dismiss with prejudice all of Island IP's causes of action, without leave to amend. No amended pleading can save Island IP's patent claims, since they are ineligible as a matter of law. And, if Island IP were inclined to amend its other claims, it should have done so in response to this Motion, when it had the ability to do so as a matter of right.

10

Dated: September 11, 2019

                            Respectfully submitted,

                        By:  */s/ Katherine Q. Dominguez*
                            Katherine Q. Dominguez

                            Josh Krevitt
                            Brian A. Rosenthal
                            Katherine Q. Dominguez
                            Gibson, Dunn & Crutcher LLP
                            200 Park Avenue
                            New York, NY 10166-0193
                            Tel.: (212) 351-4000
                            jkrevitt@gibsondunn.com
                            barosenthal@gibsondunn.com
                            kdominguez@gibsondunn.com

                            Jordan Bekier (admitted *pro hac vice*)
                            Gibson, Dunn & Crutcher LLP
                            333 Grand Avenue
                            Los Angeles, CA 90071
                            Tel.: (213) 229-7000
                            jbekier@gibsondunn.com

                            *Attorneys for Defendants StoneCastle Cash Management LLC, StoneCastle Insured Sweep LLC, StoneCastle Partners, LLC, StoneCastle Financial Corp., and StoneCastle Management LLC*

## **CERTICATE OF SERVICE**

      I certify that the foregoing document was electronically filed with the Clerk of the Court on September 11, 2019, via the Court's CM/ECF system and has been served on all counsel of record who have consented to electronic service.

Dated: September 11, 2019                  */s/ Katherine Q. Dominguez*

                                                                                 Katherine Q. Dominguez